Filed 12/3/24  P. v. Robinson CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRAMMELL GLENN ROBINSON II,<br><br>    Defendant and Appellant. | F087338<br><br>(Super. Ct. No. RF009217A)<br><br><br>**OPINION** |

-ooOoo-

### <u>THE COURT</u>*

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*         Before Levy, Acting P. J., Poochigian, J. and Meehan, J.

## INTRODUCTION

Defendant Trammell Glenn Robinson II was convicted in November 2023 of stealing a car and driving under the influence of methamphetamines, as well as two drug possession-related charges, all stemming from an incident occurring in January 2023. Defendant's appellate counsel raises no claims of error in briefing here, and requests that we independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. Defendant did not file a supplemental brief, but submitted a letter to the court, which was taken into consideration in this decision.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, J.H., the victim in this case, was staying at a motel in Ridgecrest, California, following his discharge from the military and while awaiting more permanent housing from the Department of Veterans Affairs. He had recently purchased an older SUV, for which he paid $2,000, as well as a flatbed car trailer, for which he paid $7,000, to allow him to transport vehicles as a means of earning money following his discharge. J.H. had encountered defendant, who he described as looking "down-and-out," in Ridgecrest on a few occasions, and volunteered to let defendant come and stay with him in his motel room. Defendant stayed with J.H. for two nights in his motel room.

J.H. typically kept one key to his vehicle on the dresser and one key in his wallet as a backup. On January 13, 2023, J.H. awoke and noticed that the key from his dresser was missing, as was his SUV. The defendant was missing from his room, along with all of defendant's belongings. J.H. thereafter called the police and reported the vehicle stolen.

The SUV was located a short while later approximately a mile away in the parking lot of a grocery store.[1] Defendant was driving, and began pulling out of a parking space,

---

[1] The trailer was found in the parking lot of a nearby bank with a "For Sale" sign placed on it.

but braked suddenly as a police officer began pulling around the SUV. Defendant then got out of the vehicle, and "rush[ed] towards the back of the vehicle," apparently headed into the grocery store. The responding officer attempted to speak with defendant, who protested he had done nothing wrong and continued to try to leave, at which point the officer handcuffed and detained defendant. The officer believed defendant to be under the influence of a controlled substance, based on his fast, mumbled speech, his unsteady gait and inability to hold still. The initial responding officer testified he believed J.H. was too impaired to operate a motor vehicle, based on the signs and symptoms that he witnessed. J.H. was taken to the grocery store parking lot by a police officer, and positively identified defendant as the man who had been staying in his motel room.

After defendant was detained and informed of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, defendant told officers that he did not have permission to take the vehicle or trailer from J.H., and told officers where they could find the trailer. Defendant further told officers he had used methamphetamines earlier in the day, although he could not say when.

Officers thereafter conducted portions of a field sobriety test, but were unable to complete the examinations when defendant became agitated and refused to cooperate further. The tests showed defendant with an elevated heart rate, difficulty estimating the passage of time, eyelid tremors, and other physical manifestations that led the officers to conclude he was under the influence of methamphetamines. Defendant was transported to a local hospital where a blood sample was taken, which contained a level of methamphetamine significantly higher than the therapeutic range.

During a search of the vehicle, officers located a syringe loaded with a liquid inside of it, which was ultimately revealed by laboratory testing to be liquid methamphetamines. Officers also located a pipe used to smoke methamphetamines in the vehicle, which had white residue and scorch marks on it. Upon recovering the vehicle,

J.H. looked inside, and told officers there were numerous items in it that did not belong to him.

The day prior to the theft, an incident occurred wherein defendant drove J.H.'s car without his permission. Defendant asked J.H. if he could drive the car, which J.H. refused, believing defendant did not know how to operate a manual transmission and might damage the vehicle. However, defendant already had J.H.'s key and refused to return it, so J.H. testified he got in the vehicle with defendant and "pretend[ed] to teach him how to drive a stick shift." Defendant drove the car briefly before J.H. managed to recover the key from him, and told him never to do that again.

During defendant's time staying with J.H., J.H. witnessed him smoking a white substance out of a glass bong or pipe. After he smoked the substance, J.H. reported defendant would become more talkative and begin pacing around the room. J.H. believed the substance to be methamphetamines, based on his experience working in a sober living facility. Defendant ignored J.H.'s requests to stop smoking in the room.

A complaint was initially filed in this matter in May 2023. Ultimately, the case proceeded to trial on an amended information charging defendant with five counts, including motor vehicle theft (count 1, Veh. Code, § 10851, subd. (a), a felony); driving under the influence (DUI) by a person convicted of a prior DUI (count 2, Veh. Code, §§ 23152, subd. (f)/23550.5, subd. (a)(2), a felony); possession of stolen property, as an alternative theory to count 1 (count 3, Pen. Code, § 496D, subd.(a), a felony); possession of a controlled substance (count 4, Health & Saf. Code, § 11377, subd. (a), a misdemeanor); and possession of a controlled substance paraphernalia (count 5, Health & Saf. Code § 11364, a misdemeanor). Aggravating circumstances of great monetary value and taking advantage of a position of trust were alleged in connection with counts 1 and 3, pursuant to California Rules of Court, rule 4.421(a)(9) and (a)(11), as well as a prior felony conviction, while the aggravating circumstance of a crime involving the threat of

great bodily harm was alleged in connection with count 2 (Cal. Rules of Court, rule 4.421(a)(1)).

The matter proceeded to trial on November 2, 2023. The jury returned a guilty verdict on all counts on November 9, 2023. The jury also found true the aggravating circumstances for great monetary value and taking advantage of a position of trust, but found not true the aggravating circumstance of a crime involving the threat of great bodily harm. Defendant was sentenced on December 12, 2023, as follows: on count 1, the upper term of three years, doubled pursuant to Penal Code section 667, subdivision (e); on count 2, the upper term of three years, doubled pursuant to Penal Code section 667, subdivision (e); and on counts 4 and 5, 180 days in county jail on each, all to be served concurrently, for a total sentence of six years. Various fees, costs, and assessments were imposed as well.

## DISCUSSION

While defendant did not file a brief, a short letter was received suggesting defendant believes he may have suffered ineffective assistance of counsel. While the letter does not explain in any detail in what ways his trial counsel was ineffective, defendant alludes to his counsel allowing an "uncredible witness" to take the stand and failing to provide camera footage from the grocery store and motel parking lots.

The Sixth Amendment entitles all defendants to effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686.) Any claim of ineffective assistance of counsel requires first showing that counsel's performance was deficient, which involves showing "counsel's representation fell below an objective standard of reasonableness," considering all circumstances. (*Id*. at p. 688.) "Judicial scrutiny of counsel's performance must be highly deferential," and must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance …." (*Id*. at p. 689.)

5.

There is no reason to believe trial counsel's representation here fell below any standard of professional competence. Defendant does not identify which witness he believes to be uncredible; however, the evidence against defendant was overwhelming. Defendant was found driving the stolen vehicle, had previously attempted to take J.H.'s vehicle without permission, admitted to officers he did not have permission to take the vehicle, and was positively identified by J.H. as the individual staying in his room who had access to the vehicle's key. Further, defendant admitted to officers he had ingested methamphetamines earlier that day, had numerous officers opine he was under the influence of methamphetamines and too impaired to safely operate a motor vehicle, and was shown to have excessively high levels of methamphetamines in his body via blood tests. The record shows that none of these witnesses were obviously lacking in credibility, nor is there any reason to believe additional video footage would have exculpated, rather than inculpated, defendant. We decline to engage in further speculation without specific arguments and citations to the record. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

Having independently reviewed the record in this matter, we are satisfied that no arguable claims of error exist, and that appellate counsel has appropriately discharged their duties pursuant to *Wende*.

## DISPOSITION

The judgment is affirmed.